UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT LEE WHITE, JR.,

                Plaintiff,             Case No. 2:20-cv-12608

                                    District Judge Gershwin A. Drain

v.                             Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 13), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 15), and AFFIRM THE COMMISSIONER'S DECISION

**I.**    **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 13), **GRANT** Defendant's motion for summary judgment

(ECF No. 15), and **AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

       Plaintiff, Robert Lee White, Jr., brings this action under 42 U.S.C. §§ 405(g)

and 1383(c)(3) for review of a final decision of the Commissioner of Social

Security (Commissioner) denying his applications for disability insurance (DI) and

supplemental security income (SSI) benefits.  This matter is before the United

States Magistrate Judge for a Report and Recommendation on Plaintiff's motion

for summary judgment (ECF No. 13), the Commissioner's cross-motion for

summary judgment (ECF No. 15), and the administrative record (ECF No. 11).

### A.    Background and Administrative History

Plaintiff alleges his disability began on February 15, 2012, at the age of 35.

(ECF No. 11, PageID.235, 243.)[1]  On October 15, 2012, ALJ James N. Gramenos

found that Plaintiff "was under a disability . . . from February 22, 2011 through

April 25, 2012[.]"  (ECF No. 11, PageID.104-123.)  ALJ Gramenos opined, *inter*

*alia*, that, "[o]n April 26, 2012, medical improvement occurred that is related to the

ability to work[.]"  (*Id.*, PageID.109.)

Plaintiff filed the DI and SSI applications at issue in the instant appeal on

August 16, 2018.  (*Id.*, PageID.235, 243.)  In his disability report, he lists several

conditions (stroke, heart attack, mixed hyperlipidemia, essential hypertension NOS

(not otherwise specified), coronary atherosclerosis, and chronic renal failure) as

limiting his ability to work.  (*Id.*, PageID.274.)  His application was denied on

October 22, 2018.  (*Id.*, PageID.124-149.)

Plaintiff requested a hearing by an Administrative Law Judge (ALJ).  (*Id.*,

PageID.168-172.)  On December 16, 2019, ALJ Patricia McKay held a hearing,

---

[1] Plaintiff's alleged onset date of July 1, 2012 – which was listed in one of his
applications (ECF No. 11, PageID.239) and in one of the field office disability
reports (*id.*, PageID.316) – was disregarded by the ALJ "because we always go
with the earliest date."  (*Id.*, PageID.78.)  And in previous applications for benefits,
Plaintiff "alleged disability beginning February 22, 2011."  (*Id.*, PageID.108.)

*during which the alleged onset date (AOD) was amended to November 30, 2018*

and at which Plaintiff and a vocational expert (VE), Helen Topcik, testified. (*Id.*,

PageID.71-103, 265, 335-336, 338.)  On March 18, 2020, ALJ McKay issued an

opinion, which determined that Plaintiff was not disabled within the meaning of

the Social Security Act. (*Id.*, PageID.48-65.)

Plaintiff submitted a request for review of the hearing decision/order. (*Id.*,

PageID.227-230.)  However, on July 31, 2020, the Appeals Council denied

Plaintiff's request for review. (*Id.*, PageID.41-47.)  Thus, ALJ McKay's decision

became the Commissioner's final decision.  Plaintiff timely commenced the instant

action on September 23, 2020. (ECF No. 1.)

### B.    Plaintiff's Medical History

The administrative record contains approximately 468 pages of medical

records, which were available to the ALJ at the time of her March 18, 2020

decision. (ECF No. 11, PageID.65, 344-811 [Exhibits 1F-11F].)  These materials

will be discussed in detail, as necessary, below.

### C.    The March 18, 2020 Administrative Decision

Pursuant to 20 C.F.R. § 416.920(a)(4), at **Step 1** of the sequential evaluation

process, the ALJ found that Plaintiff had not engaged in substantial gainful activity

since November 30, 2018, the amended AOD. (ECF No. 11, PageID.54, 79, 265.)

At **Step 2**, the ALJ found that Plaintiff had the severe impairment of chronic

kidney disease (CKD).  (*Id*., PageID.54-56.)  At **Step 3**, the ALJ found that

Plaintiff did not have an impairment or combination of impairments that met or

medically equaled the severity of one of the listed impairments.  (*Id*., PageID.56.)

**Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's

residual functional capacity (RFC)[2] and determined that Plaintiff had the RFC "to

perform the full range of sedentary work [*i.e.*, *exertional limitations*] . . . ."  (*Id*.,

PageID.57-59.)  At **Step 4**, the ALJ determined that Plaintiff was unable to

perform any past relevant work.  (*Id*., PageID.59.)  At **Step 5**, the ALJ determined

that, considering Plaintiff's age, education, work experience, and RFC, there were

jobs that existed in significant numbers in the national economy that Plaintiff could

perform.  (*Id*., PageID.59-60.)  The ALJ therefore concluded that Plaintiff had not

been under a disability, as defined in the Social Security Act, from November 30,

2018, the amended AOD, through the date of the decision.  (*Id*., PageID.60.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

---

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that

5

would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.      Analysis

Plaintiff presents two issues on appeal, claiming that:  (1) the ALJ erred in evaluating the severity of Plaintiff's anemia and "undiagnosed renal sarcoid" (also stated as "anemia, among other conditions") at Step 2; and, (2) with respect to the RFC determination, "the ALJ's reasoning does not indicate due consideration for Plaintiff's anemia and its common symptoms."  (ECF No. 13, PageID.822-831; *see also*, PageID.814.)  The Commissioner argues that:  (1) "[t]he ALJ found that Plaintiff's [CKD] was a severe impairment and limited him to sedentary work, thus accounting for any effects of anemia[;]" and, (2) "[s]ubstantial evidence supports the ALJ's finding that Plaintiff failed to meet his burden of showing that his alleged symptoms prevent him from performing sedentary work."  (ECF No. 15, PageID.843-852.)

### 1.      Records of anemia and renal sarcoid (November 29, 2018 – November 1, 2019)

6

Plaintiff seems to allege that, since the November 30, 2018 amended AOD, "the record shows treatment and diagnosis for anemia and renal failure." (ECF No. 13, PageID.823.) On November 29, 2018, Plaintiff saw Joanna Sattar, M.D., and the diagnoses included stage IV CKD, as well as anemia, which "could be related to CKD." Dr. Sattar intended to "check Iron studies and SPEP[,]" *i.e.*, serum protein electrophoresis, and noted that Plaintiff "may need endoscopy to [rule out] GI source as he does report occasional hematochezia presumably from his hemorrhoids." (ECF No. 11, PageID.404; *see also id.*, PageID.401-404.)

Several laboratory tests were performed on November 30, 2018; Plaintiff's anti double stranded DNA (dsDNA), Antinuclear Antibody (ANA) Screen (a test "used to help diagnose autoimmune disorders"), and SPEP were abnormal. (*Id.*, PageID.588-591, 768-770; https://medlineplus.gov/lab-tests/ana-antinuclear-antibody-test/ (last visited Jan. 31, 2022.) Plaintiff underwent more lab work in December 2018; his serum creatinine, urine creatinine clearance, and urine protein were abnormal (*id.*, PageID.518-519), as were his herpes simplex virus (HSV) 1 and 2 immunoglobulin G (IgG) (*id.*, PageID.593-594, 748.) Thereafter,

- On January 24, 2019, Plaintiff saw Dr. Sattar and the diagnoses included stage IV CKD, as well as anemia, which "could be related to CKD," but "now his SPEP [serum protein electrophoresis] and UPEP [urine protein electrophoresis] came back+[.]" Dr. Sattar recommended that Plaintiff "see [hematology] / [oncology]" and "may need a bone marrow

7

biopsy." (ECF No. 11, PageID.408; *see also id*., PageID.405-408, 672.)

- On February 11, 2019, Plaintiff's "CBC came back with mild leukocytosis and some chronic anemia." (ECF No. 11, PageID.543; *see also id*., PageID.525-549.)

- On May 13, 2019, Plaintiff saw Dr. Sattar, and the diagnoses included stage IV CKD – noting, *inter alia*, that "[n]o sarcoidosis was seen on limited sample can't confidently exclude the diagnosis" – and anemia, which "could be related to CKD," with notes to "check CBC today," and "[h]istorically Hb has been between 10-11[.]" (ECF No. 11, PageID.409-412; *see also id*., PageID.418-420, 453-455, 596, 600-601, 641-642, 664-668.)[3]

- Plaintiff's May 13, 2019 or May 14, 2019 renal function panel, complete blood count (CBC), and iron and transferrin saturation were abnormal. (*Id*., PageID.420, 455, 596-597, 664, 666, 668.)

- On September 12, 2019, Dr. Sattar diagnosed stage 4 CKD – noting, *inter alia*, that "[n]o sarcoidosis was seen on limited sample to confidently exclude the diagnosis" – and "iron deficiency anemia secondary to inadequate dietary iron intake[,]" – noting, *inter alia*, that Plaintiff "may need a bone marrow biopsy for definitive diagnosis as he is getting evaluate[d] for kidney [transplant] and he reports his mother died of some sort of bone marrow cancer." (ECF No. 11, PageID.413-417, 607-608, 636-650.)

- Plaintiff's September 12, 2019 or September 13, 2019 renal function panel was abnormal. (*Id*., PageID.453, 602, 634.)

---

[3] Sarcoidosis is "[a] systemic granulomatous disease of unknown cause, especially involving the lungs with resulting interstitial fibrosis, but also involving lymph nodes, skin, liver, spleen, eyes, phalangeal bones, and parotid glands; granulomas are composed of epithelioid and multinucleated giant cells with little or no necrosis." *Stedman's Medical Dictionary*, 796640 (Nov. 2014).

- On October 18, 2019, oncologist Faisal Musa, M.D. diagnosed stage 3 (moderate) "anemia of chronic kidney failure . . . ." (ECF No. 11, PageID.607-608.)

On November 1, 2019, Dr. Sattar completed a medical questionnaire, which reflects that Plaintiff's "kidney function thus far is stable[,]" and his "prognosis is fair[,]" but also opines that Plaintiff is not capable of performing a full-time job on a sustained basis, because he "may experience side effects from medications[,]" and "will require close monitor of kidney function." (ECF No. 11, PageID.383-384.) The ALJ deemed this opinion "not persuasive," (*id.*, PageID.58), and, although Plaintiff mentions this questionnaire within the summary of his medical conditions (ECF No. 13, PageID.816), he has not challenged the ALJ's application of 20 C.F.R. §§ 404.1520c, 416.920c ("How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017.").

### 2.    Step 2

Plaintiff challenges the ALJ's evaluation of the *severity* of his anemia and perhaps also his "sarcoid and renal failure, also known as kidney failure." (ECF No. 11, PageID.823-838.) "[T]he step two severity regulation codified at 20 C.F.R. §§ 404.1520(c) and 404.1521 has been construed as a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.

1988) (citing cases).  "[T]he second stage severity inquiry, properly interpreted, serves the goal of administrative efficiency by allowing the Secretary to screen out totally groundless claims."  *Farris v. Sec'y of Health & Hum. Servs.*, 773 F.2d 85, 89 (6th Cir. 1985).

### a.    Renal sarcoid/sarcoidosis

At Step 2, the ALJ found that Plaintiff's CKD was severe.  (ECF No. 11, PageID.54.)  Within his Step 2 discussion, as to "undiagnosed renal sarcoid," the ALJ stated:  "The diagnosis of sarcoidosis was noted to be *questionable* and a biopsy report noted that there was *not enough evidence* to confirm/exclude sarcoidosis . . . [,]" and "a very recent report in September 2019 noted that sarcoidosis was not seen during testing . . . ."  (ECF No. 11, PageID.55 (emphases added).)  The ALJ supported these statements with unattributed citations to Dr. Sattar's October 25, 2018, November 29, 2018, and September 12, 2019 notes.  (ECF No. 11, PageID.55, 400, 404, 642.)

To the extent Plaintiff challenges the ALJ's Step 2 treatment of his kidney failure, he cites his Stage V CKD diagnosis, although he and the ALJ label it as occurring in May 2019 when it appears to have occurred as early as January or February 22, 2019.  (*Id*., PageID.823; ECF No. 11, PageID.58, 457-462, 595-596, 603, 689-717, 728.)  Plaintiff also notes that, by the time of the December 16, 2019

10

administrative hearing, he was "awaiting a kidney transplant . . . ."  (ECF No. 13, PageID.823; *see also* ECF No. 11, PageID.84, 94.)

However, as already noted, the ALJ found his "chronic kidney disease" to be a severe impairment.  (*Id.*, PageID.54.)  Moreover, the ALJ's "interpretation of the evidence" regarding his "undiagnosed renal sarcoid" does not appear to be "inaccurate[,]" because, as Plaintiff and the ALJ both seem to have acknowledged, the biopsy sample "could not provide conclusive evidence of the impairment," nor could it "rule it out . . . ."  (ECF No. 13, PageID.827; ECF No. 11, PageID.55.) Indeed, it appears that: Dr. Sattar recommended a kidney biopsy on October 25, 2018 (*id.*, PageID.400); Plaintiff underwent a kidney biopsy on November 13, 2018 (*id.*, PageID.499-502); Dr. Sattar's November 29, 2018 notes reflect that "[n]o sarcoidosis was seen on limited sample can't confidently exclude the diagnosis[,]" (*id.*, PageID.403-404); and, she made similar comments in notes dated January 24, 2019, May 13, 2019, and September 12, 2019 (*id.*, PageID.408, 412, 416, 642).  Furthermore, to the extent Plaintiff relies upon MDOC chronic care visit notes dated June 22, 2018 (ECF No. 11, PageID.346) and Dr. Sattar's October 25, 2018 notes (*id.*, PageID.398-400) as evidence of his "longstanding history of sarcoid and renal failure" or "kidney failure," (ECF No. 13, PageID.827-828), the ALJ acknowledged Plaintiff's CKD and stage 5 kidney failure diagnoses elsewhere in the opinion (ECF No. 11, PageID.58).

### b.   Anemia

Preliminarily, I note that, unlike chronic renal failure, *Plaintiff does not list anemia in his August 16, 2018 disability report as one of the conditions that limit his ability to work* (ECF No. 11, PageID.274), although I recognize this pre-dates Plaintiff's amended AOD of November 30, 2018.  In any event, as for Plaintiff's instant challenge to the ALJ's consideration of anemia at Step 2, Plaintiff complains that the ALJ's hearing decision "does not discuss [his] anemia."  (ECF No. 13, PageID.823.)  In support of this argument, Plaintiff cites Dr. Sattar's records dated, *inter alia*:  (a) November 29, 2018 (ECF No. 11, PageID.402-404) ("could be related to CKD, will check Iron studies and SPEP"); (b) January 24, 2019 (*id*., PageID.408) ("could be related to CKD"); and, (c) September 12, 2019 (*id*., PageID.413, 416) (mentioning "iron deficiency anemia" and iron deficient anemia).  (ECF No. 13, PageID.824-826.)[4]

Plaintiff claims "it is reasonable to expect these symptoms to have more than a minimal effect of [sic] Plaintiff's ability to work continually and on a sustained basis[,]" "the evidence supports a finding that anemia presents more than a minimal abnormality[,]" "the medical condition of anemia is not completely

---

[4] Plaintiff also points to notes that pre-date his November 30, 2018 amended AOD, namely Dr. Sattar's October 25, 2018 notes (ECF No. 11, PageID.399).  (ECF No. 13, PageID.826.)

groundless," and Plaintiff's anemia was "concerning enough to be referred to a specialist for a bone marrow biopsy to determine if it was related to a more serious condition."  (ECF No. 13, PageID.826.)

### c.    Harmless error

In any event, the ALJ's failure to address Plaintiff's anemia at Step 2 is not dispositive.  Plaintiff himself acknowledges that, "[s]ince the Secretary properly could consider claimant's [anemia] in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's [anemia] constituted a severe impairment could not constitute reversible error."  *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).  (ECF No. 13, PageID.826-827.) This is so because, as noted above, "the severity determination is 'a *de minimis* hurdle in the disability determination process[,]'" *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting *Higgs*, 880 F.2d at 862), and is used to "screen out totally groundless claims[,]" *Farris*, 773 F.2d at 89.

In other words, the Step 2 severity analysis is simply a <u>threshold determination</u>.  Sixth Circuit precedent readily establishes that failure to find an impairment severe at Step 2 of the sequential analysis is not reversible error if the ALJ found another impairment severe and thus continued with the five-step evaluation.  *See e.g., Fink v. Astrue*, 253 F. App'x 580, 584 (6th Cir. 2007);

13

*Anthony*, 266 F. App'x at 457.  "The fact that some of [the plaintiff's] impairments were not deemed to be severe at step two is therefore legally irrelevant."  *Anthony*, 266 F. App'x at 457.  In other words, an error at Step 2 "is harmless as long as the ALJ found at least one severe impairment and continued the sequential analysis and ultimately addressed all of the claimant's impairments in determining h[is] residual functional capacity."  *Swartz v. Barnhart*, 188 F. App'x 361, 368 (6th Cir. 2006).

In Plaintiff's case, within the RFC discussion, the ALJ acknowledged Plaintiff's CKD diagnosis, including his "stage 5 kidney failure" diagnosis, and ultimately concluded that "there is nothing to indicate an inability to perform sedentary work on a sustained basis."  (ECF No. 11, PageID.58.)[5]  The ALJ also concluded that, "[w]hile the majority of evidence clearly demonstrates no problems with exertional activities, the residual functional capacity still limits the claimant to sedentary work as described in the prior ALJ decision."  (*Id*.)  In the end, while Plaintiff suggests error in the ALJ's treatment of Plaintiff's kidney impairment at Step 2, and while he also correctly observes that, "in determining Plaintiff's RFC,

---

[5] Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a).  "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  (*Id*.)

the ALJ made no mention of [his] anemia[,]" (ECF No. 13, PageID.827), any error

at Step 2 with respect to Plaintiff's renal sarcoid or his anemia is harmless,

because, as set forth in further detail below, Plaintiff does not illustrate how the

RFC, with its exertional limitation to sedentary work – *i.e.*, the *most restrictive* of

the physical exertional requirements (20 C.F.R §§ 404.1567(a), 416.967(a)) – fails

to accommodate Plaintiff's kidney impairment or anemia.  *Sparks v. Comm'r of*

*Soc. Sec.*, No. 13-CV-13954, 2015 WL 5210463, at *9 (E.D. Mich. Aug. 31, 2015)

(Ludington, J.) ("simply because plaintiff suffers from certain conditions or carries

certain diagnoses does not equate to disability or a particular RFC.  Rather, it is

well settled that the mere diagnosis of an impairment is not enough to show

disability; a claimant must also prove its severity and functional impact.") (citing

*Foster v. Bowen,* 853 F.2d 483, 489 (6th Cir.1988)).

### 3. RFC

Plaintiff's second statement of error, which contends that the RFC

determination does not comply with the Social Security Administration's own

rules, namely SSR 96-8p ("Assessing Residual Functional Capacity in Initial

Claims"), is more specifically a challenge to the ALJ's "consideration for

Plaintiff's anemia and its common symptoms[,]" such as chronic headaches,

migraines, insomnia, and fatigue. (ECF No. 13, PageID.828-831; *see also id*.,
PageID.825-826.)[6]

Put another way, Plaintiff challenges the ALJ's representation that she
"considered all symptoms and the extent to which these symptoms can reasonably
be accepted as consistent with the objective medical evidence and other evidence,
based on the requirements of 20 CFR 416.929 and SSR 16-3p." (ECF No. 11,
PageID.57.) *See also* 20 C.F.R. § 404.1529. In Plaintiff's case, the ALJ
considered Plaintiff's administrative hearing testimony in comparison with record
evidence. (*Id*., PageID.57-58.) Ultimately, the ALJ concluded that "the claimant's
statements concerning the intensity, persistence and limiting effects of these
symptoms are not entirely consistent with the medical evidence and other evidence
in the record for the reasons explained in this decision." (*Id*., PageID.58.)

### a.    Low energy, fatigue, headaches

Plaintiff challenges the ALJ's treatment of his "low energy/being easily
fatigued," "headaches, lightheadedness, shortness of breath, and blurry vision[,]"
(ECF No. 11, PageID.57). (ECF No. 13, PageID.828-830.) In addressing these
symptoms, the ALJ made two specific observations.

---

[6] *See Stedman's Medical Dictionary*, 35950 (Nov. 2014) (Anemia is "frequently
manifested by pallor of the skin and mucous membranes, shortness of breath,
palpitations of the heart, soft systolic murmurs, lethargy, and tendency
to fatigue.").

### i.   Observations regarding symptoms

First, the ALJ noted:  "Despite complaints of fatigue in the very early records, it is pointed out that the claimant denied many of these symptoms at subsequent office visits and there were no positive clinical signs to corroborate these claims."  (*Id.*, PageID.57.)  This statement may not be entirely accurate, as the medical record contains some positive findings.[7]

As for evidence of denials of symptoms at subsequent office visits, the ALJ did not expressly acknowledge Plaintiff's reports of fatigue on October 25, 2018 and November 29, 2018 (ECF No. 11, PageID.399, 403), although these records pre-date the November 30, 2018 amended AOD.  Also, the ALJ cited that Plaintiff was negative for fatigue in June 2018 (*id.*, PageID.54, 346), even though the ALJ failed to expressly cite later reports of fatigue or "still feeling tired" in December 2018 and January 2019 (*id.*, PageID.392, 407, 731).  In any event, "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 F.

---

[7] For example:  (a) "[a] positive diffuse granular basement membrane reaction" with the November 2018 immunofluorescence study (*id.*, PageID.501); (b) seemingly positive Hepatitis B Surface Antibody in November 2018 (*id.*, PageID.586-587, 767); (c) positive bowel sounds (*id.*, PageID.373, 399, 403, 407, 411); (d) positive HSV 1 and 2 IGG in December 2018 (*id.*, PageID.594, 748); and, (e) abnormal lab work, *e.g.*, abnormal renal function panel in May 2019 and September 2019 (*id.*, PageID.420, 453, 455, 596, 634).

App'x 496, 508 (6th Cir. 2006) (quoting *Loral Def. Sys.-Akron v. N.L.R.B.*, 200

F.3d 436, 453 (6th Cir. 1999) (citations and internal quotation marks omitted)).

Additionally, as for headaches and migraines, the ALJ discussed these

conditions at Step 2 as follows:

> The claimant also reported intermittent and uncomplicated headaches and requested a cane in December 2018 (B5F/9; B11F/149, 200). However, he denied dizziness and there is no indication that a cane was ever sought.  In fact, there is no mention of a cane in later reports; instead they indicated that the claimant was ambulatory with a normal gait and no imbalance.  It is also pointed out that there was no subsequent treatment until the claimant again sought treatment for migraines in June 2019 (B7F/12).  Nevertheless, at this visit, the claimant admitted they were better controlled and infrequent (B5F/4). It was noted that the claimant was doing well with no significant concerns.  And it was concluded that he was not a candidate for migraine prophylaxis (B5F/4).  The claimant was only advised to take over-the-counter Tylenol for pain (B7F/19).  Lastly, it is further pointed out that a CT [computed tomography] of the brain showed no abnormalities in January 2019 (B5F/2, 11).

(ECF No. 11, PageID.55 (citing ECF No. 11, PageID.393 [12/18/2018], 753

[12/19/2018], 804 [10/9/2018], 435 [12/19/2018], 388 [4/29/2019], 442

[2/19/2019], 386 [4/29/2019], 395 [01/18/2019]).)[8]  While the February 2019 notes

---

[8] The ALJ seems to be mistaken about the dates of some of the cited pages, because, for June 2019:  (a) the ALJ cited B7F/12, which is dated December 19, 2018 (*id*., PageID.435), when perhaps the ALJ intended to cite B7F/22, which is dated June 21, 2019 (*see id.*, PageID.443-447; *see also* ECF No. 11, PageID.651-660); and (b) the ALJ cited B5F/4, which is dated April 29, 2019, although it was electronically signed in June 2019 (*id*., PageID.388).  Also, if the ALJ intended the citation to B7F/19 as evidence from June 2019, it is dated February 19, 2019 (*id*., PageID.442).  Nonetheless, other than the citation to Ex. 11F/200 (*i.e.*, ECF No.

about "OTC Tylenol" seem to have been based in part on avoiding NSAIDS and narcotics for the sake of his kidneys (ECF No. 11, PageID.442; *see also id*., PageID.723), the January 2019 head CT indeed revealed "no acute intracranial process," although there was "chronic bilateral maxillary sinus disease." (*Id*., PageID.395.)  Thus, even if the ALJ did not expressly cite Dr. Sattar's September 12, 2019 notes, which list an active diagnosis of chronic headache (*see id*., PageID.413), the ALJ unquestionably considered and discussed headaches and migraines (*id*., PageID.55).  In any case, *Plaintiff's claim of error regarding the RFC is not about the accuracy of the ALJ's record summary*.  Instead, it is about the *cause of* his symptoms, such as headaches and fatigue.  (ECF No. 13, PageID.829-831.)

### ii.    Association with a severe impairment

Second, the ALJ noted that "none of these [symptoms] is associated with a severe impairment."  (ECF No. 11, PageID.57.)  Plaintiff's statement, "[t]his has been shown to be wrong[,]" appears related to this comment by the ALJ, because Plaintiff goes on to say, "[a]s mentioned herein, anemia should have been considered a severe impairment because it is not [a] completely groundless claim." (ECF No. 13, PageID.828-829.)  This is akin to Plaintiff's Step 2 argument.

---

11, PageID.804), the citations in this paragraph post-date the November 30, 2018 amended AOD.

Furthermore, even if a medical condition is not "a completely groundless claim," it does not necessarily follow that it must therefore be classified as a severe impairment.

Yet, Plaintiff also allows that it is "unclear as to the exact root cause of Plaintiff's complaints of chronic headaches and fatigue[,]" because even his own treaters "were uncertain as to the interplay between Plaintiff's medical conditions." (ECF No. 13, PageID.829 (emphasis added).)  In support of this argument, Plaintiff points to:  (i) Dr. Sattar's November 29, 2018 notes about his Stage IV CKD, namely – "I am hesitant to treat the membraneous [sic] nephropathy with immunosuppression agents due to the amount of sclerotic gloms seen, lack of significant proteinuria and potential side effects of the treatment agents[,]" (ECF No. 11, PageID.404; *see also id*., PageID.408, 416, 642); and, (ii) Dr. Sattar's January 24, 2019 statement that his anemia "could be related to CKD . . . [,]" (*id*., PageID.408; *see also id*., PageID.404, 412).  (ECF No. 13, PageID.829.) Therefore, Plaintiff claims, it is reasonable to conclude that the symptoms Plaintiff alleged and for which he was treated "were associated with his anemia as they are commonly associated with the condition," even though "the exact cause of the symptoms is unclear."  (ECF No. 13, PageID.829.)  *Cohen v. Sec'y of Dep't of Health & Hum. Servs.*, 964 F.2d 524, 529 (6th Cir. 1992) (Plaintiff "is not required

to prove the exact cause of h[is] condition.") (citing *Sparks v. Bowen*, 807 F.2d

616, 617-618 (7th Cir.1986)).

Plaintiff focuses on the ALJ's observation that "*none* of these" symptoms –

*i.e.*, "low energy/being easily fatigued[,]" and Plaintiff's claimed "headaches,

lightheadedness, shortness of breath, and blurry vision[,]" – which, even if without

express reference to Plaintiff's anemia, could be potentially related thereto – *"is*

*associated with a severe impairment*."  (ECF No. 11, Page ID.57 (emphasis

added).)  In effect, instead of arguing that the ALJ did not consider low energy,

fatigue and headaches, Plaintiff focuses on the fact that the ALJ did not find

anemia to be a severe impairment and contends the ALJ's reasoning "fails to

consider the medical *causes* of these symptoms."  (ECF No. 13, PageID.830

(emphasis added).)  Plaintiff also contends that "symptoms such as fatigue and

headaches, like that of pain, are hard to objectively capture[,]" and notes that

"objective laboratory tests and treatment records already establish the existence of

the underlying condition for the symptoms."  (ECF No. 13, PageID.830.)

However, even if substantial evidence "supports a finding that anemia is a *severe*

medically determinable impairment" at Step 2, and even if Plaintiff's "sleep issues,

fatigue, and chronic headaches" are *caused* by anemia (ECF No. 13, PageID.831),

Plaintiff must still show that the RFC, with its exertional limitation to "the full

range of sedentary work," fails to account for his associated chronic headaches, migraines, and fatigue.  Plaintiff has not done so.

### b.    Sleeping / insomnia

Plaintiff challenges the ALJ's treatment of his "trouble sleeping." (ECF No. 13, PageID.830.)  In the written decision, presumably referring to Plaintiff's testimony about difficulty with sleeping (*see* ECF No. 11, PageID.88, 94-95), the ALJ acknowledged Plaintiff's report of "poor sleep . . . ." (ECF No. 11, PageID.57.)  Yet, the ALJ also stated that "the only mention of not sleeping well at night was due to playing video games and using computers and phones at night . . . [,]" in support of which the ALJ expressly cited, although without date, December 19, 2018 progress notes.  (ECF No. 11, PageID.57-58, 758.)  These notes reflect the provider's advice to "try and avoid any use of computers, phones, playing video games about 30-60 min before going to bed," and "only go to bed when he feels tiered [sic] and ready to sleep," which "might help with his sleeping pattern." (ECF No. 11, PageID.438, 758.)  The ALJ also stated that "[t]he claimant was advised to read a book instead of being on a screen late at night[,]" (*id*., PageID.58), although the Court has been unable to locate the source of this advice within the administrative record.

Plaintiff claims it was error for the ALJ "to tie Plaintiff's sleep problems to his use of electronic devices at night and to dismiss Plaintiff's complaints of low

energy without giving due consideration to whether Plaintiff's medically determinable anemia was the cause of these symptoms." (ECF No. 13, PageID.830.) In other words, Plaintiff takes issue with the ALJ citing "Plaintiff's playing video games and staying up late at night as the cause of his sleep issues," where "an underlying condition known to cause [the] symptom is present." (*Id.*, PageID.830.) Yet, it appears Plaintiff told the provider on December 19, 2018 that "on average he sleeps about 3-4 hrs/night. This is mostly due to working night shift while being incarcerated. He does also stay up using the computer, playing video games, and using his phone." (ECF No. 11, PageID.435, 753, 756.) Notwithstanding the Court's inability to locate the source of the recommendation to read a book, the ALJ appears to have fairly characterized the December 19, 2018 notes.

And, circling back to the question of whether Plaintiff's anemia was *the cause* of the various symptoms discussed above and that this somehow should have led to a different RFC − assuming *arguendo* that the cause was important − it is Plaintiff's burden to demonstrate that the RFC fails to account for *the symptoms* of his anemia. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five."). Here, the ALJ was supposed to, and did, avoid playing doctor on the nebulous issue of causation and correctly

23

refrained from reaching her own medical opinions on raw medical data.  *See Manso-Pizarro v. Sec'y of Health & Hum. Servs.*, 76 F.3d 15, 17 (1st Cir. 1996); *Gross v. Comm'r of Social Sec.*, 247 F. Supp.3d 824, 828-829 (E.D. Mich. 2017). Plaintiff must still show that the RFC, with its exertional limitation to "the full range of sedentary work," – *i.e.*, the *most restrictive* of the physical exertional requirements (20 C.F.R §§ 404.1567(a), 416.967(a)) – fails to account for his associated sleep issues and insomnia.  Plaintiff has not done so.

### c.   Summation

The ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (*Id.*, PageID.58.)  Perhaps in response to this specific statement, Plaintiff contends "there is nothing inconsistent" between the evidence of his condition and "the manifestation of its common symptoms . . . ."  (ECF No. 13, PageID.829-830.)  But Plaintiff's RFC argument – *i.e.*, his challenge to the ALJ's "consideration for Plaintiff's anemia and its common symptoms[,]" such as chronic headaches, migraines, insomnia, and fatigue – is akin to a request for the Court to impermissibly re-weigh the evidence.  *Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472, 472 (6th Cir. 1982) ("Our task is not to reweigh the evidence.  That is solely the province of the Secretary.") (citing *Wokojance v. Weinberger*, 513

24

F.2d 210 (6th Cir. 1975)).  Indeed, the ALJ is permitted to consider inconsistencies in the record when evaluating symptoms.  20 C.F.R. §§ 404.1529(a), 416.929(a) ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.").  Thus, an ALJ's comparison of subjective statements to record evidence is an entirely appropriate task, and, in Plaintiff's case, he has not shown that the ALJ  was inaccurate when she discounted Plaintiff's subjective statements with references to apparent inconsistencies in the record evidence.

### F.    Conclusion

Plaintiff has the burden of proof on his statement(s) of error.  He has not shown reversible error in the ALJ's Step 2 or RFC determinations.  Accordingly, for the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 13), **GRANT** Defendant's motion for summary judgment (ECF No. 15), and **AFFIRM** the Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must precisely recite the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  February 7, 2022                    s/*Anthony P. Patti*
                                            Anthony P. Patti
                                            UNITED STATES MAGISTRATE JUDGE